UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| REDEEMER FELLOWSHIP OF<br>EDISTO ISLAND,<br><br>              Plaintiff,<br><br>v.<br><br>TOWN OF EDISTO BEACH,<br>SOUTH CAROLINA,<br><br>              Defendant. | )<br>)<br>)<br>)<br>)<br>)   Case No. 2:18-cv-02365-DCN<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**UNITED STATES' STATEMENT OF INTEREST IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Defendant Town of Edisto Beach ("the Town") has opened its Civic Center for rentals by private groups and "welcomes civic, political, business, social groups and others to its facility" on equal terms. Facility Use Guidelines, ECF No. 1-5, at 1. Despite previously permitting "the Civic Center to be rented by religious groups and organizations for worship services," Def.'s Resp. In Opp. To Pl.'s Mot. For Prelim. Inj. at 3, ECF No. 17 ("Def. Br."), the Town recently amended its Facility Use Guidelines to prohibit rentals "for the purpose of religious worship services," Facility Use Guidelines, ECF No. 1-5, at 1. The Town thus has singled out and banned a category of constitutionally protected speech and religious exercise—religious worship—based solely on its content and viewpoint. This discriminatory ban is impossible to reconcile with *Widmar v. Vincent*, 454 U.S. 264, 265 (1981), where the Supreme Court struck down on First Amendment grounds a virtually identical ban on "religious worship or religious teaching" in a university's limited public forum.

The Town nonetheless attempts to justify its new ban based on "concerns" that permitting religious worship services in the Civic Center on equal terms as other forms of expression might violate "the Establishment Clause." Def. Br. at 3. But the Supreme Court already rejected that position in *Widmar* because a policy granting religious groups or speech equal access to a limited public forum does not violate the Establishment Clause. *See* 454 U.S. at 269-275. Indeed, the Town's reading of the First Amendment is exactly backwards: the Town seeks to permit the content and viewpoint discrimination against religious worship that the Free Speech and Free Exercise Clauses prohibit and to prohibit the equal access for religious expression that the Establishment Clause permits. The Court should hold that Plaintiff Redeemer Fellowship has established a likelihood of success on its Free Speech and Free Exercise claims.

## INTEREST OF THE UNITED STATES

The United States of America respectfully files this Statement of Interest under 28 U.S.C. § 517, which authorizes the Attorney General "to attend to the interests of the United States in a suit pending in a court of the United States." 28 U.S.C. § 517. The United States is resolutely committed to protecting the freedoms guaranteed by the First Amendment. The First Amendment enshrines both the right to "the free exercise" of religion and "the freedom of speech" at the bedrock of the Nation's constitutional system. These freedoms lie at the heart of a free society and are the "effectual guardian of every other right." Virginia Resolutions (Dec. 21, 1798), *in* 5 THE FOUNDERS CONSTITUTION, 135, 136 (Philip B. Kurland & Ralph Lerner, eds., 1987).

The United States also has an unassailable interest in ensuring the equal treatment of persons irrespective of their religious beliefs in accessing public facilities. The United States enforces Title III of the Civil Rights Act of 1964, 42 U.S.C. § 2000b, barring discrimination based on race, color, religion, and national origin in public facilities. The United States also has statutory

authority under Title IX of the Civil Rights Act of 1964, 42 U.S.C. § 2000h-2, to intervene in equal protection cases of general public importance.

Finally, the United States operates numerous non-public and "designated" or "limited" public forums, and accordingly has an interest in the outcome of cases involving the application of the First Amendment to such forums. The Department of Justice has previously participated as amicus curiae in several other cases raising related issues, including *Good News Club v. Milford Central School*, 533 U.S. 98 (2001), and *Lamb's Chapel v. Center Moriches Union Free School District*, 508 U.S. 384 (1993).[1]

## BACKGROUND

The Town "welcomes civic, political, business, social groups and others" to rent its Civic Center for events on equal terms. Facility Use Guidelines, ECF No. 1-5, at 1. The Town "previously permitted the Civic Center to be rented by religious groups and organizations for worship services." Def. Br. at 3. Plaintiff Redeemer Fellowship, a small Christian congregation, "rented space in the Civic Center on April 1, 2018 and May 6, 2018 for worship services." *Id.* Seeking to arrange a regular place to hold its worship services, Redeemer Fellowship proposed to the Town that it rent the auditorium in the Civic Center either one Sunday per month or every Sunday. *See* Decl. of Cameron Andrews ¶ 19, ECF No. 5-3.

At a May 10, 2018 meeting, the Town council "discussed concerns regarding the rental of the Civic Center for religious groups and organizations for religious worship services." Def. Br. at 3. The Town attorney advised the council that permitting rentals of the Civic Center for religious worship services "could violate the Establishment Clause and put the Town at risk for liability."

---

[1] See also, e.g., Bronx Household of Faith v. Bd. of Educ. of the City of New York, 650 F.3d 30 (2d Cir. 2011); Child Evangelism Fellowship of Md., Inc. v. Montgomery County Public Schools, 373 F.3d 589 (4th Cir. 2004); Child Evangelism Fellowship of N.J. Inc. v. Stafford Township School District, 386 F.3d 514 (3d Cir. 2004); Donovan v. Punxsutawney Area School District, 336 F.3d 211 (3d Cir. 2003).

3

May 10, 2018 Town Council Meeting Minutes, Ver. Compl. Ex. C.  The Town attorney opined that allowing the Civic Center's name to be affiliated with religious worship services could "give[] the appearance that the Town is endorsing or supporting [the] particular religious organization" and that charging the Civic Center's below-market rents to religious groups engaged in worship services could be "termed a subsidy" of religious exercise.  *Id.*

Based on those "concerns," the Town Council "moved to amend the Facility Use Guidelines to prohibit use of the Civic Center for religious worship services."  Def. Br. at 3.  As amended, the Facility Use Guidelines now provide: "Such use shall not be for the purpose of religious worship services."  Facility Use Guidelines, ECF No. 1-5, at 1.

Even after the amendment, "[t]he Town continues to permit the Civic Center to be reserved by churches and other religious groups and organizations for meetings and other functions to teach religion, read from and discuss the Bible or other religious works, advocate religious views, sing hymns, and engage in prayer."  Def. Br. at 3-4.  The Town also "currently permits an Episcopal church to use the Civic Center for office space, Vestry meetings, Bible studies, and theological training."  *Id.* at 4.  The Town nevertheless has denied Redeemer Fellowship's request to use the Civic Center for "religious worship services" on the same terms that the Town offers to any other group wishing to engage in constitutionally protected speech.  Facility Use Guidelines, ECF No. 1-5, at 1; Def. Br. at 3-4.

## ARGUMENT

A plaintiff seeking a preliminary injunction must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008).  In the context of an alleged violation of First Amendment

4

rights, "a plaintiff's claimed irreparable harm is inseparably linked to the likelihood of success on the merits . . . ." *Centro Tepeyac v. Montgomery County*, 722 F.3d 184, 191 (4th Cir. 2013). That is because, as the Supreme Court has explained, the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

The Town's ban on "religious worship services" at the Civic Center contravenes the controlling decision in *Widmar*, where the Supreme Court struck down on First Amendment grounds a ban on "religious worship or religious teaching" in a limited public forum. 454 U.S. at 265. The Supreme Court explained that the ban in *Widmar* "discriminated against student groups and speakers based on their desire to use a generally open forum to engage in religious worship and discussion," *id.* at 269, and could not survive strict scrutiny because a neutral policy of equal access to a limited public forum does not violate the Establishment Clause. *Id.* at 269-275.

Here as well, the Town's ban on religious worship services at the Civic Center "discriminates . . . based on [a] desire to use a generally open forum to engage in religious worship" and cannot survive strict scrutiny. *Id.* at 269. The Town, in fact, has come nowhere close to satisfying its strict scrutiny burden. To the contrary, the Town's legally erroneous "concerns" about Establishment Clause liability turn First Amendment jurisprudence on its head: the First Amendment *prohibits* the content-based and viewpoint-based restrictions on protected speech that the Town seeks to permit and *permits* religious worship services the equal access to government facilities that the Town seeks to prohibit. The Court should hold that Redeemer Fellowship has shown that it is likely to succeed on the merits of its Free Speech and Free Exercise claims.

## I.     REDEEMER FELLOWSHIP IS LIKELY TO SUCCEED ON THE MERITS OF ITS FREE SPEECH AND FREE EXERCISE CLAIMS

The parties agree that the Civic Center qualifies "as a designated or limited public forum" rather than a traditional public forum. Def. Br. at 6; *Good News Club*, 533 U.S. at 106 (the First Amendment standards that courts must "apply to determine whether a [government] has unconstitutionally excluded a private speaker from use of a public forum depend on the nature of the forum."). The Town's ban on religious worship services in the limited public forum of the Civic Center triggers strict scrutiny under the Free Speech and Free Exercise Clauses for two reasons.

First, as the Supreme Court held on substantially similar facts in *Widmar*, a ban on "religious worship" in a limited public forum constitutes a "content-based" "discriminatory exclusion" of "speech and association protected by the First Amendment." 454 U.S. at 274. Second, by banning only religious worship services while permitting other forms of speech about religion—including church meetings "to teach religion, read from and discuss the Bible or other religious works, advocate religious views, sing hymns, and engage in prayer," Def. Br. at 3-4— the Town has engaged in viewpoint discrimination. *See Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2230 (2015); *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995); *see also Fairfax Covenant Church v. Fairfax County School Board*, 17 F.3d 703, 707 (4th Cir. 1994) (content or viewpoint discrimination against religious speech "also interferes with or burdens the [c]hurch's right to speak and practice religion protected by the Free Exercise Clause"); *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 (2017) (laws which discriminate on the basis of religion are valid only if they are justified "by a state interest of the highest order") (internal quotation marks omitted).

The Town, however, has not carried its strict scrutiny burden. The Town's "concerns" about a risk of Establishment Clause liability are legally flawed and insufficient to satisfy strict

6

scrutiny in any event; the Town's reliance on divided out-of-circuit decisions is misplaced; and the Town provides no basis for this Court to ignore the controlling precedents from the Supreme Court and the Fourth Circuit. The Court should hold that Redeemer Fellowship is likely to succeed on the merits of its Free Speech and Free Exercise claims.

### A. The Town's Discriminatory Ban On Religious Worship Services Triggers Strict Scrutiny

The Supreme Court's decision in *Widmar* demonstrates that the Town's discriminatory ban on religious worship services at the Civic Center triggers (and fails) strict scrutiny. The university in *Widmar* opened its facilities as a "limited public forum" and permitted registered student organizations to use those facilities for meetings on equal terms. 454 U.S. at 265, 272. For several years, an organization of Christian students "regularly sought and received permission to conduct its meetings in University facilities." *Id.* at 265. The university then informed that organization that it could no longer conduct its meetings in university facilities because a university regulation prohibited use of those facilities "for purposes of religious worship or religious teaching." *Id.* at 265.

The Supreme Court held that the regulation triggered strict scrutiny—and ultimately struck it down—under the First Amendment. The Supreme Court explained that "[t]he Constitution forbids a State to enforce certain exclusions from a forum generally open to the public, even if it was not required to create the forum in the first place." *Id.* at 267-68. The regulation triggered strict scrutiny because it "discriminated against student groups and speakers based on their desire to use a generally open forum to engage in religious worship and discussion," which "are forms of speech and association protected by the First Amendment." *Id.* at 269.

In the course of this holding, the Supreme Court specifically rejected the argument that "religious worship" is "not speech protected by" the First Amendment, but instead is an "act"

7

undeserving of First Amendment protection. *Id.* at 269 n.6. The Supreme Court identified "at least three difficulties" with applying this proposed "speech" - "act" distinction. *Id.* First, this proposed distinction has no "intelligible content" because it is unclear when activities like "singing hymns, reading scripture, and teaching biblical principles" cease to be protected "speech" and become unprotected acts of "worship." *Id.* Second, this distinction would not "lie within the judicial competence to administer" because it would require judicial inquiry into "the significance of words and practices to different religious faiths, and in varying circumstances by the same faith" and, thus, would "entangle the State with religion in a manner forbidden by our cases." *Id.* And, third, the distinction would bear no relevance to the First Amendment analysis because there is no reason to "require different treatment for religious speech designed to win religious converts . . . than for religious worship by persons already converted." *Id.*

The Fourth Circuit followed *Widmar* to invalidate discrimination against religious speech in a limited public forum in *Fairfax Covenant Church*. The policy at issue there required a school board to charge religious groups escalating rents to use public school facilities after hours, but to charge lower rents to non-religious groups. *See* 17 F.3d at 705. The Fourth Circuit concluded that, like the regulation challenged in *Widmar*, the challenged policy impermissibly discriminated against religious speech and, therefore, triggered strict scrutiny. *See id.* at 705-07.

Here, like the regulation in *Widmar* that banned "religious worship or religious teaching," 454 U.S. at 265, the Town's "religious worship services" ban "discriminate[s] against . . . groups and speakers based on their desire to use a generally open forum to engage in religious worship and discussion," which are "forms of speech and association protected by the First Amendment," *id.* at 269. Thus, "[i]n order to justify discriminatory exclusion from a public forum based on the

8

religious content of a group's intended speech," the Town must show that its ban survives strict scrutiny. *Id.* at 269-70.

If more somehow were needed, the Town's ban on religious worship services triggers strict scrutiny for another reason: it constitutes impermissible viewpoint discrimination. *See Rosenberger*, 515 U.S. at 829 (A government may not engage in "viewpoint discrimination, even when the limited public forum is one of its own creation."). "Viewpoint discrimination is . . . an egregious form of content discrimination" that arises when the government justifies regulation of speech based upon "the specific motivating ideology or the opinion or perspective of the  speaker . . . ." *Id.* Viewpoint discrimination, even in a limited public forum, necessarily triggers strict scrutiny. *See id.*; *Reed*, 135 S. Ct. at 2230.

The Supreme Court held that a ban on "religious worship" in a limited public forum constituted viewpoint discrimination in *Good News Club*. There, a public school made its building available for after-school "instruction in any branch of education, learning or the arts" as well as for "social, civic and recreational meetings and entertainment events, and other uses pertaining to the welfare of the community . . . ." 533 U.S. at 102. The school, however, denied a Christian organization's request to use a part of the building on the ground that the proposed use—to have "a fun time singing songs, hearing a Bible lesson and memorizing scripture"—was "the equivalent of religious worship." *Id.* at 103.

The Supreme Court noted that "[t]he Club's activities are materially indistinguishable from those in . . . *Widmar*," *id.* at 113, and held that the school's prohibition on those activities "is viewpoint discriminatory." *Id.* at 107. Indeed, the school permitted groups such as the Boy Scouts to use its facilities to teach "morals and character," but forbade the Christian organization from teaching morals and character "from a Christian perspective." *Id.* at 108-110. "[S]peech

9

discussing otherwise permissible subjects cannot be excluded from a limited public forum on the ground that the subject is discussed from a religious viewpoint" because such an exclusion "constitutes impermissible viewpoint discrimination." *Id.* at 112.

The Supreme Court's decision in *Good News Club* followed two prior Supreme Court decisions striking down as viewpoint discriminatory an exclusion of a private group from presenting films in a limited public forum based on the films' discussion of family values from a religious perspective, *Lamb's Chapel*, 508 U.S. at 384, and a university's refusal to fund a religious publication on par with other publications because it addressed issues from a religious perspective, *Rosenberger*, 515 U.S. at 819.  Moreover, the Supreme Court itself has described *Widmar* as involving viewpoint discrimination.  In fact, in one case, all nine justices characterized the discrimination in *Widmar* as "viewpoint" discrimination, *see Christian Legal Soc. v. Martinez*, 561 U.S. 661, 684 (2010) (five-justice majority); *accord id.* at 685, 695; *id.* at 722 (four-justice dissent), and the majority opinion substituted "viewpoint" in brackets for "content" when quoting *Widmar*, *id.* at 685.  *See also Badger Catholic, Inc. v. Walsh*, 620 F.3d 775, 781 (7th Cir. 2010) (noting that the Supreme Court has "described *Widmar* as a case holding that refusing to allow 'religious worship and discussion' in a public forum is forbidden viewpoint discrimination").

Here as well, the Town's ban on "religious worship services" at the Civic Center constitutes viewpoint discrimination.  By its own admission, the Town allows other forms of religious speech to take place in the Civic Center, including "meetings" by "churches and other religious groups and organizations . . . to teach religion, read from and discuss the Bible or other religious works, advocate religious views, sing hymns, and engage in prayer." Def. Br. at 3-4.  The Town also "currently permits an Episcopal church to use the Civic Center for office space, Vestry meetings, Bible studies, and theological training." *Id.* at 4.  And the Town's Facility Use Guidelines permit

10

speech by "civic, political, business, and social groups and others" about or even opposing religion. Facility Use Guidelines, ECF No. 1-5, at 1.

The Town, however, has drawn a line singling out and banning the perspective of "religious worship services" from the Civic Center. *Id.* Even if it were possible for the Town to distinguish between religious "worship" and other forms of religious "speech" in a principled way—which there is not, *see Widmar*, 454 U.S. at 269 n.6—the Town's ban requires it "to inquire into the significance of words and practices to different religious faiths, and in varying circumstances by the same faith," *id.* This inquiry not only "would tend inevitably to entangle the [Town] with religion" in a forbidden manner, *id.*, but also require the Town to determine "the specific motivating ideology or the opinion or perspective of the speaker," *Rosenberger*, 515 U.S. at 829. By permitting some speech regarding religion but excluding speech regarding religion from a "worship" perspective, the Town has engaged in "impermissible viewpoint discrimination" that triggers strict scrutiny. *Good News*, 533 U.S. at 112; *Lamb's Chapel*, 508 U.S. 384; *Rosenberger*, 515 U.S. 819; *see also Widmar*, 454 U.S. at 267-70; *Martinez*, 561 U.S. at 684.

The Town offers two principal arguments in support of its disparate treatment of religious worship at the Civic Center, but both fail. First, the Town argues that the ban is a *permissible* content-based restriction because a government may reserve a limited public forum "for the discussion of certain topics," and it has reserved the Civic Center for speech that does not encompass religious worship services. Def. Br. at 6 (quoting *Rosenberger*, 515 U.S. at 829); *see also id.* at 6-8 (citing *Goulart v. Meadows*, 345 F.3d 239, 248 (4th Cir. 2003)). The Town thus ignores the Supreme Court's controlling holding in *Widmar*—and the Fourth Circuit's later faithful adherence to that holding in *Fairfax Covenant Church*—that, as a matter of law, exclusion of "religious worship or religious teaching" from "a generally open forum" is an impermissible

11

"content-based" restriction that triggers strict scrutiny. *Widmar,* 454 U.S. at 265, 269-70; *Fairfax Covenant Church*, 17 F.3d at 706-07. Moreover, the Town further ignores that the ban on religious worship services at the Civic Center is impermissible *viewpoint* discrimination that automatically triggers strict scrutiny even in a limited public forum, regardless of whether a government entity may engage in some other form of *content* discrimination in such a forum. *See Good News*, 533 U.S. at 112; *Lamb's Chapel*, 508 U.S. 384; *Rosenberger*, 515 U.S. 819; *see also Widmar*, 454 U.S. at 267-70; *Martinez*, 561 U.S. at 684.

Second, the Town argues that religious "worship" is not constitutionally protected speech because it "is a type of activity," not "expression." Def. Br. at 21. This argument flies directly in the face of the Supreme Court's conclusion in *Widmar* that *"religious worship and discussion . . . are forms of speech and association protected by the First Amendment."* 454 U.S. at 269 (emphasis added). Indeed, the Town's attempt to distinguish between "the expression of a religious point of view" and "the conduct of religious worship," Def. Br. at 21, is both untenable and judicially unmanageable, *Widmar*, 454 U.S. at 269 n.6.

For this reason, the Town's invocation of the decisions of the divided Second Circuit and the divided Ninth Circuit, *see* Def. Br. at 8-23 (discussing *Bronx Household of Faith v. Bd. of Educ. of the City of New York*, 650 F.3d 30 (2d Cir. 2011), and *Faith Center Church Evangelical Ministries v. Glover*, 480 F.3d 891 (9th Cir. 2007)), is fundamentally flawed. As the dissenting judges in both of those cases pointed out, those courts' reliance upon a purported distinction between religious "worship" and religious "speech" is impossible to reconcile with *Widmar. See Bronx Household*, 650 F.3d at 56 & n.2 (Walker, J., dissenting); *Faith Center*, 480 F.3d at 897-901 (Bybee, J., joined by six other judges, dissenting from denial of rehearing *en banc*). The Court should adhere to the controlling decisions of the Supreme Court and the Fourth Circuit, and decline

the Town's invitation to appoint it the arbiter of an illusory distinction between religious "worship" and religious "speech." Def. Br. at 21; *see also Widmar*, 454 U.S. at 269 n.6; *Rosenberger*, 515 U.S. at 829.

### B.    The Town Has Failed To Carry Its Strict Scrutiny Burden

To carry its strict scrutiny burden, the Town must show that its ban on religious worship services at the Civic Center "is necessary to serve a compelling state interest and . . . narrowly drawn to achieve that end." *Widmar*, 454 U.S. at 270. The Town fails at the first step because it has not even identified a compelling state interest to justify its discriminatory ban on religious worship services. The Town invokes its "concerns" that allowing religious worship services at the Civic Center could lead to "liability under the Establishment Clause" by creating an "appearance" of a Town endorsement or "subsid[y]" of a "particular religion." Def. Br. at 3. Once again, however, the Town's position is irreconcilable with *Widmar*—and, in fact, turns the governing First Amendment jurisprudence on its head.

In the first place, the Town's "concerns" about an "appearance" of an Establishment Clause violation are unfounded—and even the Town itself does not consistently embrace them. Indeed, the Town "continues to permit the Civic Center to be reserved by churches and other religious groups and organizations for meetings and other functions to teach religion, read from and discuss the Bible or other religious works, advocate religious views, sing hymns, and engage in prayer," and further allows "an Episcopal church to use the Civic Center for office space, Vestry meetings, Bible studies, and theological training." Def. Br. at 3-4. The Town thus apparently harbors no "concerns" that permitting these forms of religious expression at the Civic Center puts it at risk of Establishment Clause liability. *See id.* But the Town nowhere explains how permitting these forms of religious expression does not risk the "appearance" of Town endorsement or subsidy, yet permitting "religious worship services" somehow does. *Id.* at 3-4. This failure is especially glaring

13

given that the Town provides "no indication" as to how a religious group or observer would determine when "'singing hymns, reading scripture, and teaching biblical principles' . . . cease to be" permissible speech and become "unprotected 'worship'" that precipitates the Town's Establishment Clause "concerns." *Widmar*, 454 U.S. at 269 n.6; Def. Br. at 3.

Moreover, the Town's mere "concern" about an "appearance" of a Town endorsement or subsidy, *see* Def. Br. at 3, does not amount to an Establishment Clause violation, let alone satisfy strict scrutiny. The school board in *Fairfax Covenant Church* advanced a similar argument that a church's "long-term or permanent use" of school facilities on equal terms as non-religious users might ripen into an Establishment Clause violation. *See* 17 F.3d at 707-08. The Fourth Circuit rejected that argument, explaining that the school board's "*anxiety* or *concern*" about a potential Establishment Clause violation was insufficient to satisfy strict scrutiny. *Id.* at 708 (emphases in original). In fact, "[r]ather than having the effect of remedying the concern about the Establishment Clause," the schools board's policy disfavoring religious speech "move[d] the School Board into a non-neutral, antireligion corner by burdening free speech and the free exercise of religion." *Id.*

In all events, the Town's reading of the Establishment Clause is legally erroneous: as the Supreme Court explained in *Widmar* and reaffirmed in subsequent cases, a policy granting religious groups and speech equal access to government facilities and programs does not violate the Establishment Clause. *See Widmar*, 454 U.S. at 275-277; *Good News*, 533 U.S. at 112-114; *Trinity Lutheran*, 137 S. Ct. at 2012. As in *Widmar*, a neutral policy permitting religious worship services at the Civic Center on equal terms as other forms of protected expression—such as the Town's pre-amendment policy—would eliminate, rather than establish, any impermissible endorsement of religion or a particular religious group. 454 U.S. at 272-73. The primary effect of

14

the Town's designation of the Civic Center as a limited public forum "open to all forms of discourse," including religious worship, would not "be to advance religion" at all.  454 U.S. at 273.  In fact, such an "open forum . . . does not confer any imprimatur of state approval" or endorsement "on religious sects or practices" that use the forum.  *Id.* at 274.  That is particularly true where, as here, "the forum is available to a broad class of nonreligious as well as religious speakers," *id.*, including "civic, political, business, social groups and others," Facility Use Guidelines, ECF No. 1-5, at 1; *see also Fairfax Covenant Church*, 17 F.3d at 707.

After all, "a significant factor in upholding governmental programs in the face of Establishment Clause attack is their *neutrality* towards religion."  *Good News*, 533 U.S. at 114 (emphasis in original).  This "guarantee of neutrality is respected, not offended, when the government, following neutral criteria and evenhanded policies, extends benefits to recipients whose ideologies and viewpoints, including religious ones, are broad and diverse."  *Id.*  The Town's ban on religious worship services at the Civic Center, far from promoting the neutrality toward religion that the Establishment Clause demands, moves the Town "into a non-neutral, antireligion corner by burdening" constitutionally protected religious worship in violation of the First Amendment.  *Fairfax Covenant Church*, 17 F.3d at 708; *see also Rosenberger*, 515 U.S. at 845 (O'Connor, J., concurring) ("[I]f a State refused to let religious groups use facilities open to others, then it would demonstrate not neutrality but hostility to religion.").

Nor would the Town's permitting of religious worship services at the Civic Center on neutral and equal terms create an unconstitutional subsidy of Redeemer Fellowship or any other religious group.  While the Establishment Clause prohibits expenditure of state funds or conversion of federally funded buildings "to religious uses" or uses that "otherwise stamp" government action "with the imprimatur of religion," it places no limitation "on the [government's] capacity to

maintain forums equally open to religious and other discussions." *Widmar*, 454 U.S. at 272 n.12 (distinguishing *Tilton v. Richardson*, 403 U.S. 672 (1971)). Accordingly, as with the Town's ongoing rentals of the Civic Center for church meetings "to teach religion, read from and discuss the Bible or other religious works, advocate religious views, sing hymns, and engage in prayer," Def. Br. 3-4, rentals of the Civic Center for religious worship services on equal terms as other forms of expression, even if permitted at below-market rates, do not violate the Establishment Clause, *see Widmar*, 454 U.S. at 272 n.12; *Fairfax Covenant Church*, 17 F.3d at 708. And, in all events, the Town has adduced no evidence that its below-market rates actually subsidize any group, religious or otherwise, and do not merely compensate the Town "for any expense incurred by use of" the Civic Center. *Fairfax Covenant Church*, 17 F.3d at 708 ("Rather than subsidizing a church user, such a cost-covering rent in fact provides money to the School Board to offset its ongoing expenses for school facilities.").

Thus, in sum, the Town gets it exactly backwards: it seeks to permit the content and viewpoint discrimination against religious worship that the Free Speech and Free Exercise Clauses prohibit and to prohibit the equal access to the Civic Center that the Establishment Clause permits. As explained above, the Town's discriminatory ban on religious worship services at the Civic Center triggers strict scrutiny under both the Free Speech and the Free Exercise Clauses, and the Town's unfounded "concerns" about the risk of Establishment Clause liability fail to carry its strict scrutiny burden.

## CONCLUSION

For the foregoing reasons, the Court should hold that Redeemer Fellowship has established a likelihood of success on the merits of its Free Speech and Free Exercise claims.

16

Dated: this 20th day of November, 2018

Respectfully submitted,

| | |
|---|---|
| SHERRI A. LYDON<br>United States Attorney<br>District of South Carolina | ERIC S. DREIBAND<br>Assistant Attorney General<br>Civil Rights Division<br><br>JOHN M. GORE<br>Principal Deputy Assistant Attorney General<br>Civil Rights Division<br><br>SAMEENA SHINA MAJEED<br>Chief |
| s/ Robert Sneed<br>BARBARA BOWENS (#4004)<br>ROBERT SNEED (#07437)<br>Assistant United States Attorneys<br>United States Attorney's Office<br>District of South Carolina<br>Wells Fargo Building<br>1441 Main Street, Suite 500<br>Columbia, South Carolina 29201<br>Tel.: (803) 254-2912<br>Fax: (803) 254-2912<br>Barbara.Bowens@usdoj.gov<br>Robert.Sneed@usdoj.gov | MICHAEL S. MAURER<br>Deputy Chief<br>RYAN G. LEE<br>JUNIS L. BALDON<br>Trial Attorneys<br>Housing and Civil Enforcement Section<br>950 Pennsylvania Avenue, NW – NWB 7091<br>Washington, D.C. 20530<br>Phone: (202) 305-1806<br>Tel: (202) 305-0115<br>Fax: (202) 514-1116<br>Junis.Baldon@usdoj.gov |

Attorneys for the United States

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the United States District Court for the District of South Carolina through the CM/ECF system, which will send a Notice of Electronic Filing to registered CM/ECF participants.

                s/ Robert Sneed
                Attorney for the United States of America