# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| REDEEMER FELLOWSHIP OF EDISTO ISLAND, ) ) ) Plaintiff, ) v. ) ) TOWN OF EDISTO BEACH, ) SOUTH CAROLINA ) ) Defendant. ) _____) | Case No. 2:18-cv-02365-DCN |

**PLAINTIFF'S RESPONSE TO
DEFENDANT'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

After vigorously defending its Civic Center worship ban in multiple briefs, and at the preliminary injunction hearing just two weeks earlier, the Defendant Town of Edisto Beach now attempts to moot the Church's preliminary injunction motion by an eleventh-hour policy change. But this type of litigation tactic is the very reason the doctrine of voluntary cessation exists: to stop a "manipulative litigant" from evading an adverse judicial decision by temporarily changing its unconstitutional conduct. *Porter v. Clarke*, 852 F.3d 358, 364 (4th Cir. 2017).

"It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000) (internal quotation marks omitted). No party should be able to "evade judicial review, or to defeat a judgment, by temporarily altering" its unlawful conduct. *Porter*, 852 F.3d at 364 (internal quotation marks omitted); *see also U.S. v. W.T. Grant Co.,* 345 U.S. 629, 632 n.5 (1953) ("It is the duty of the

1

courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform….").

To that end, a defendant claiming that its voluntary cessation moots a case bears the burden of showing that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 189. The Supreme Court has described that burden as "heavy," *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); "stringent," *Friends of the Earth*, 528 U.S. at 189; and "formidable," *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013).

This heavy burden of proof extends to last-minute government policy changes. Last year, the United States Supreme Court declined to find moot a challenge to a government policy excluding religious groups from equal participation in a government program. *Trinity Lutheran Church v. Comer*, 137 S. Ct. 2012, 2019 (2017). Just days before oral argument, the government reversed course and changed its policy to allow religious organizations to participate in the program. *See id*. at 2019 n.1. But the government's voluntary cessation did not moot any aspect of the case. *See id.* The Supreme Court emphatically stated that the government "has not carried the heavy burden of making absolutely clear that it *could not revert* to its policy of excluding religious organizations." *See id*. (internal quotation marks omitted) (emphasis added).

As discussed below, the Town has not, and cannot, meet its similarly heavy burden in this case. Nor can the Town prevail under even the more lenient "exception" that the Fourth Circuit has applied to legislative statute repeals because—on the facts of this case—reenactment of the worship ban appears not only possible but probable. *See, e.g., Brooks v. Vassar*, 462 F.3d 341, 348 (4th Cir. 2006) (noting that a case challenging a repealed law may not be moot unless reenactment appears probable).

**I.     The Town has not made it "absolutely clear" that it could not revert to its unconstitutional worship ban and reenactment appears probable.**

The Town of Edisto Beach has not made it "absolutely clear" that its last-minute policy change is sincere and permanent. In fact, the timing of its policy change and its continued attempts to justify its worship ban indicate that reenactment is not only possible, but probable.

**A. The Town vigorously defended its unconstitutional worship ban up until it became convinced the Court would rule against the Town.**

First, the timing of the Town's policy change casts doubt on its permanence. The Town has defended the constitutionality of its worship ban on Establishment Clause grounds at every turn. It vigorously defended its worship ban in its briefs opposing the Church's motion for preliminary injunction. *See* Def.'s Resp. in Opp'n to Pl.'s Mot. for Prelim. Inj., Dkt. No. 17; Def's Mot. for Leave to File Surreply in Opp'n to Pl's Reply in Supp. of Mot. for Prelim. Inj., Dkt No. 20; Aff. of Jane S. Darby in response to U.S. Statement of Interest, Dkt. No. 26. Similarly, just two weeks earlier, the Town vigorously defended its worship ban at the November 29, 2018, preliminary injunction hearing before this Court.

It was only *after* defense counsel became convinced that the Court was likely to enjoin the worship ban that the Town changed its policy. The Town has dug in its heels at every turn, and changed its position only when it feared that it was likely to receive an adverse judicial decision. This overt attempt to moot the Church's preliminary injunction motion and avoid an adverse ruling is the very type of litigation tactic the voluntary cessation doctrine was designed to prevent. Litigation tactics deserve little deference from the Court. And a last-minute policy change made as a litigation tactic makes reenactment of the worship ban appear not only possible, but probable.

### B. The Town continues to defend its worship ban and gives no indication that it now understands its Establishment Clause concerns to be baseless.

Moreover, the Town's Resolution revoking the Civic Center worship ban casts doubt on its permanence. First, the Town continues to defend its worship ban even in the Resolution *revoking* the ban. The Town reiterated its Establishment Clause concerns—"subsidizing the endorsement and establishment of a church"—that led it pass the worship ban in the first place. Resolution ¶ 8, attached as Ex. A to Def.'s Supp. Mem. in Opp'n to Pl.'s Mot. for Prelim. Inj. And then the Town argued:

> WHEREAS, the Town consulted with its attorney who conducted legal research and found case law which held that a government's exclusion of religious worship services as a use for limited public forums was a valid and constitutional exclusion which did not infringe upon any First Amendment rights of religious groups and organizations.

*See id*. ¶ 9. This is not the statement of a government entity that has recognized its wrongdoing. In other words, the Town continues to insist that its worship ban is justified by law. Courts have been rightly suspicious of voluntary cessation that evidences a desire to return to its old ways. *See Porter*, 852 F.3d at 365 ("[C]ourts have been particularly unwilling to find that a defendant has met its heavy burden to establish that its allegedly wrongful conduct will not recur when…the defendant's reluctant decision to change a policy reflects a desire to return to the old ways.") (internal quotation marks omitted).

Second, and in stark contrast to its attempts to justify the worship ban, the Town offered no justification or policy basis for suddenly repealing the ban. Instead, the Resolution simply stated that the Town Council met and rescinded it:

> NOW THEREFORE on December 13, 2018, the Town Council met again to consider the language of the Civic Center's Facility Use Guidelines and HEREBY AGREES to rescind the exclusion of religious worship services within the Civic Center such that the original Facility Use Guidelines (attached hereto) are now applicable for the use of the Civic Center moving forward.

4

Resolution ¶ 12. The Resolution does not state that the Town grappled with and resolved its Establishment Clause concerns. The Resolution does not indicate that the Town was persuaded that its worship ban was legally wrong. The Resolution does not concede that allowing churches equal access to government facilities on the same basis as other members of the community is constitutionally required. In sum, there is no reason to conclude that the Town has actually changed its policy position on equal access to the Civic Center. This repeal is a litigation tactic. And the lack of a clear policy change reinforces the Church's concern that reenactment of the worship ban at some later point appears not merely possible, but probable.

Finally, the ease with which the worship ban was initially enacted, and the ease with which it was rescinded, make it impossible for the Town to make "absolutely clear" that its former policy of excluding churches will not be revived.

## CONCLUSION

In conclusion, the Town's litigation tactics to avoid an adverse judicial decision should not be rewarded. The Church respectfully urges the Court to issue a ruling on its Motion for Preliminary Injunction.

Dated: December 19, 2018               Respectfully submitted,

                                       *s/ Matthew Gerrald*
                                       Matthew Gerrald
                                       District Court ID # 10055
                                       BARNES, ALFORD, STORK & JOHNSON, LLP
                                       1613 Main Street
                                       Columbia, SC 29201
                                       Telephone: (803) 799-1111
                                       Fax: (803) 254-1335
                                       Email: matt@basjlaw.com

                                       Christiana M. Holcomb*
                                       DC Bar # 176922
                                       ALLIANCE DEFENDING FREEDOM
                                       440 First Street NW, Suite 600
                                       Washington, D.C. 20001
                                       Telephone: (202) 393-8690
                                       Fax: (202) 347-3622
                                       Email: cholcomb@ADFlegal.org

                                       Erik W. Stanley*
                                       AZ Bar # 030961
                                       Kyle McCutcheon*
                                       AZ Bar # 032310
                                       David Cortman*
                                       AZ Bar #029490
                                       ALLIANCE DEFENDING FREEDOM
                                       15100 N. 90th Street
                                       Scottsdale, AZ 85260
                                       Telephone: (480) 444-0020
                                       Fax: (480) 444-0028
                                       Email: estanley@ADFlegal.org
                                       Email: kmccutcheon@ADFlegal.org
                                       Email: dcortman@ADFlegal.org

                                       *Counsel for Plaintiff*

                                       *Admitted Pro Hac Vice

6