IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Redeemer Fellowship of Edisto Island, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:18-cv-02365-DCN |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Town of Edisto Beach, South Carolina, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| The United States of America, | ) | |
| | ) | |
| Interested Party. | ) | |

This matter comes before the court on Redeemer Fellowship of Edisto Island's ("Redeemer Fellowship") motion for a preliminary injunction, ECF No. 5. For the reasons set forth below, the court finds the motion for a preliminary injunction and Redeemer Fellowship's request for permanent injunctive relief in its complaint to be moot. Redeemer Fellowship's claim for damages remains.

## I. BACKGROUND

The facts of this case are simple. Redeemer Fellowship began meeting in January 2018 on Sundays for worship services in the garage space underneath the stilt home of one of its members near Edisto Beach. Due to its growing size and inability to protect against inclement weather at this location, Redeemer Fellowship sought to rent the Edisto Beach Civic Center (the "Civic Center"), which is operated by the Town of Edisto Beach (the "Town"). On February 14, 2018, a representative of Redeemer Fellowship

1

contacted Kelly Moore ("Moore"), who was responsible for managing the Civic Center, with a request to use the space for its worship services. In March, Moore approved Redeemer Fellowship's application to rent space at the Civic Center, and Redeemer Fellowship paid $200 for the rental. On April 1, 2018, Redeemer Fellowship held its first worship service in the Civic Center auditorium.

On April 9, 2019, Redeemer Fellowship submitted another request for use of the Civic Center's auditorium as well as one multi-purpose office. Moore approved the church's request to use the Civic Center for its May 6, 2018 worship service, and Redeemer Fellowship paid the Town another $200 fee. On May 3, 2018, Redeemer Fellowship paid another $300 to reserve the Civic Center auditorium for its June 3, 2018 worship service. On May 10, 2018, the Town Council met to discuss whether to approve or deny the request, at which time the Town Attorney advised the Council to reject the church's request and to amend the Edisto Beach Civic Center Facility Use Guidelines (the "Guidelines") to prohibit rentals for religious worship services so as to not violate the Establishment Clause. The Town informed Redeemer Fellowship that its application had been denied and refunded the $300. On June 14, 2018, the Town Council officially amended the Guidelines to provide that:

> The Edisto Beach Civic Center welcomes civic, political, business, social groups and others to its facility. The auditorium, the gallery/lobby area, two multi-purpose rooms, and/or the grounds may be scheduled for use provided:
> - Such use does not interfere or conflict with previously scheduled programs or normal operation of the Center;
> - Such use is in accordance with local, state, and federal laws and ordinances governing the Center; and
> - Such use conforms to applicable policies, guidelines, and procedures in effect at the Center.
> - <u>Such use shall not be for the purpose of religious worship services</u>

Challenged Guidelines, ECF No. 1-5 (emphasis added). The Guidelines also stated that the Civic Center "reserves the right to deny a request" and that "such refusal . . . may be for, but is not limited to, any one of the following reasons: . . . [a] determination that the event could be disruptive, hazardous to persons or the Center, or is unlawful or a breach of peaceful circumstances." Id. Redeemer Fellowship claims to have pursued other options to rent space on Edisto Island but was unable to locate another suitable rental space for some time.

Redeemer Fellowship filed suit on August 27, 2018, alleging the following causes of action: (1) violation of the right to free speech under the First Amendment; (2) violation of the right to free exercise of religion under the First Amendment; (3) violation of the Establishment Clause of the First Amendment; (4) violation of the Equal Protection Clause of the Fourteenth Amendment; and (5) violation of the Due Process Clause. ECF No. 1. With its complaint, Redeemer Fellowship also filed a motion for preliminary injunction. ECF No. 5. The Town filed a response on October 9, 2018. ECF No. 17. Redeemer Fellowship filed a reply on October 16, 2018. ECF No. 18. The United States filed statement of interest in support of the motion on November 20, 2018. ECF No. 24. The Town filed an affidavit in opposition to this statement of interest on November 28, 2018. ECF No. 26.

On November 29, 2018, the court held a hearing on this motion. On December 14, 2018, the Town filed supplemental briefing, informing the court that it has rescinded the challenged language from the Guidelines and asking that the court find the motion for a preliminary injunction to be moot. ECF No. 28. On December 19, 2018, Redeemer

Fellowship filed a reply in opposition. ECF No. 29. The motion has been fully briefed and is ripe for the court's review.

## II.  STANDARD

In order to obtain a preliminary injunction, a plaintiff must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). "The irreparable harm to the plaintiff and the harm to the defendant are the two most important factors." Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 812 (4th Cir. 1991). "[T]he plaintiff bears the burden of establishing that each of these factors supports granting the injunction." Id. (quoting Technical Publishing Co. v. Lebhar–Friedman, Inc., 729 F.2d 1136, 1139 (7th Cir. 1984)). "Moreover, the required 'irreparable harm' must be 'neither remote nor speculative, but actual and imminent.'" Id. (quoting Tucker Anthony Realty Corp. v. Schlesinger, 888 F.3d 969, 975 (2d Cir. 1989)). In other words, the plaintiff must make a "clear showing" of irreparable harm. Id. (quoting ECRI v. McGraw–Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1987)).

## III.  DISCUSSION

The Town's supplemental briefing asks the court to find moot Redeemer Fellowship's motion for a preliminary injunction because the Town has rescinded the ban on religious worship services. The Town has reinstituted the Guidelines that existed prior to the Town's decision to add the challenged language, such that they now provide, in pertinent part:

> The Edisto Beach Civic Center welcomes civic, political, business, social groups and others to its facility. The auditorium, the gallery/lobby area, two multi-purpose rooms, and/or the grounds may be scheduled for use provided:
> - Such use does not interfere or conflict with previously schedules programs or normal operation of the Center;
> - Such use is in accordance with local, state, and federal laws and ordinances governing the Center; and
> - Such use conforms to applicable policies, guidelines, and procedures in effect at the Center.

New Guidelines, ECF No. 28-1 at 4. As the new Guidelines demonstrate, they perfectly mirror the challenged Guidelines, except that the challenged provision—that "such use shall not be for the purpose of religious worship services"—has been removed. The Town submitted these updated Guidelines with their supplemental briefing.

The Town also attached its December 13, 2018 resolution (the "Resolution") that repealed this challenged language. In it, the Town explains that it instituted the ban on religious worship services because it had "previously received a request from a church-affiliated group to use the Civic Center for religious worship services for an ongoing basis" and that it was "concerned about the legal use of the publicly owned Civic Center [ ] for religious worship services and was further concerned that by agreeing to the group's proposed discounted rates for usage of the Civic Center, that the Town could be effectively subsidizing the endorsement and establishment of a church." ECF No. 28-1 at 2. The Town explains that it consulted with its attorney "who conducted legal research and found case law which held that a government's exclusion of religious worship services as a use for limited public forums was a valid and constitutional exclusion." Id. The Town emphasized that its "decision to amend the [ ] Guidelines was not motivated by any hostility toward any religion" but was rather motived solely by the desire to

"curtail the Town's risk for liability under the Establishment Clause of the First Amendment." Id. at 3.  The Town explained that, a few weeks after the hearing on this matter, the Town council reconvened to yet again consider the language of the challenged Guidelines, at which point the Town agreed to "rescind the exclusion of religious worship services within the Civic Center such that the original [ ] Guidelines [ ] are now applicable for the use of the Civic Center moving forward." Id.  This resolution was formally adopted by the Town Council, and signed by the mayor and town clerk, on December 13, 2018.  Id.

The Town now argues that the Resolution moots Redeemer Fellowship's motion for a preliminary injunction.  While the Town's supplemental briefing only asks the court to moot the motion, the substance of its argument and the law cited relates mostly to whether the request for injunctive relief in the complaint is moot as well.  The court finds that both the motion for a preliminary injunction and the complaint's request for permanent injunctive relief are mooted by the Town's Resolution removing the challenged language from the Guidelines.

"The Constitution confines the jurisdiction of the federal courts to actual 'Cases' or 'Controversies.'" Beta Upsilon Chi Upsilon Chapter at the Univ. of Fla. v. Machen, 586 F.3d 908, 915 (11th Cir. 2009) (citing U.S. Const. art. III, § 2, cl. 1).  "Under the 'case or controversy' requirement in Article III of the United States Constitution, federal courts only have jurisdiction to decide cases that affect the rights of litigants." Youngstown Publ'g Co. v. McKelvey, 189 F. App'x 402, 403 (6th Cir. 2006).  "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally

6

cognizable interest in the outcome.'" Already, LLC v. Nike, Inc., 133 S.Ct. 721, 726 (2013) (quoting Murphy v. Hunt, 455 U.S. 478, 481 (1982) (per curiam)). "When a case or controversy ceases to exist—either due to a change in the facts or the law—'the litigation is moot, and the court's subject matter jurisdiction ceases to exist also.'" Porter v. Clarke, 852 F.3d 358, 363 (4th Cir. 2017) (quoting S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs, 789 F.3d 475, 482 (4th Cir. 2015)).

There is an important exception to the mootness doctrine—that of voluntary cessation. "The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." Knox v. Serv. Emps. Int'l Union, Local 1000, 132 S.Ct. 2277, 2287 (2012); see also City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982) ("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."). "In accordance with this principle, the standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: 'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000) (quoting United States v. Concentrated Phosphate Export Assn., 393 U.S. 199, 203 (1968)). "The 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." Id.

Redeemer Fellowship relies heavily on the Laidlaw line of cases to argue that the voluntary cessation doctrine should prevent the court from finding that this case is rendered moot by the Town's Resolution. ECF No. 29. However, as the Town points out in its supplemental briefing, courts have consistently found that "[a] statutory change . . . is usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed." Chem. Producers & Distribs. Ass'n v. Helliker, 463 F.3d 871, 878 (9th Cir. 2006); see also Doe v. Shalala, 122 F. App'x 600, 601 (4th Cir. 2004) (unpublished) ("A legislature may voluntarily cease allegedly illegal conduct by amending or repealing the challenged law or by allowing it to expire. In general, the amendment, repeal, or expiration of a statute moots any challenge to that statute."); Coral Springs St. Sys., Inc. v. City of Sunrise, 371 F.3d 1320, 1328–29 (11th Cir. 2004) ("[G]overnmental entities and officials have been given considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities."); Ragsdale v. Turnock, 841 F.2d 1358, 1365 (7th Cir. 1988) ("[C]essation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties.").

In Beta Upsilon, a Christian fraternity at the University of Florida ("University") was denied official recognition as a student group because it violated the University's nondiscrimination policy. 586 F.3d at 910. The fraternity brought an action asking for declaratory and injunctive relief, and also moved the district court to enter a preliminary inunction requiring the University to allow it to register as an official student organization. Id. After the fraternity appealed the district court's denial of this motion, the University amended its nondiscrimination policy and allowed the fraternity to register

8

as a student organization.  Id.  Because of this change in the policy, and "satisfied that the controversy at issue ha[d] ended," the Eleventh Circuit dismissed the appeal.  Id.  In finding the issue moot, the court noted that the "basis for [the voluntary cessation] doctrine is a concern that a defendant who voluntarily ceases an activity is free to return to his old ways."  Id. at 916 (quotes omitted).  Yet the court reasoned that "such concern is less warranted when the defendant is not a private citizen but a government actor."  Id.  As compared to voluntary cessation of challenged activities by a private citizen or company, as was the case in Laidlaw and Concentrated Phosphate, "when the defendant is not a private citizen but a government actor . . . there is a rebuttable presumption that the objectionable behavior will not recur."  Id. (quoting Troiano v. Supervisor of Elections in Palm Beach County, Fla., 382 F.3d 1276, 1283 (11th Cir. 2004)).  Indeed, the Eleventh Circuit found that "[i]n cases where government policies have been challenged, the Supreme Court has held almost uniformly that voluntary cessation of the challenged behavior moots the claim."  Id. at 917.

Similarly, in Rosebrock v. Mathis, the Ninth Circuit upheld the denial of injunctive relief to the plaintiffs who had alleged that the Veterans Administration Greater Los Angles Healthcare System ("VAGLA") violated his First Amendment rights by preventing him from hanging the American flag union down a particular fence on the VAGLA campus.  745 F.3d 963 (9th Cir. 2014).  A month after the plaintiff filed his complaint, the VAGLA associate director, who had previously prohibited him from hanging his flag, sent an email to the VAGLA police asking that the police consistently enforce the VA regulation that prevented the hanging of any pamphlets, flyers, flags and materials.  Id. at 969.  The Ninth Circuit affirmed the district court's holding "that the

9

Government's voluntary cessation of its inconsistent enforcement of [the regulation] mooted the request for injunctive relief." Id. at 970. The court relied up the presumption "that a government entity is acting in good faith when it changes its policy." Id. at 971.

Like the case currently before this court, Youngstown Publ'g Co. v. McKelvey involved a challenge to a local city government's policy—specifically, an edict by the Mayor of Youngstown Ohio "prohibiting members of his administration from communicating with the Business Journal," allegedly in retaliation for the journal's criticism of him. 189 F. App'x 402, 403 (6th Cir. 2006). After the lawsuit was filed, a new mayor took office and formally rescinded the prior mayor's edict. Id. at 404. The court found that this action by the new mayor mooted the request for injunctive relief, because "the edict was removed by a government official [ ] rather than a private party." Id. at 406. According to the Sixth Circuit,

> [T]here appears to be a difference in the way voluntary cessation of illegal activities is treated when the offending parties are government officials rather than private parties:
> We note additionally that cessation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties. According to one commentator, such self-correction provides a secure foundation for a dismissal based on mootness so long as it appears genuine.

Id. (quoting Mosley v. Hairston, 920 F.2d 409, 415 (6th Cir. 1990)).

These cases, all of which involved a government entity or representative repealing the challenged policy, differ significantly from the line of cases cited by Redeemer Fellowship. Laidlaw involved violations of the Clean Water Act ("CWA") by a private company. Laidlaw, 528 U.S. at 173. The company had continuously discharged significant quantities of toxic pollutants into a waterway; indeed, the district court found

10

that it had discharged more than the permitted amount of mercury on almost five hundred occasions. Id. at 173–177. The Supreme Court found that the case was not moot merely because the company had voluntary ceased from this illegal activity and had instead begun complying with the limits set by its permit and the CWA. Id. at 189–91. This case highlights the key reason why courts treat voluntary cessation by a private individual and by a government entity differently. In Laidlaw, were the court to dismiss the cases as moot after months of complex and expensive litigation, the company could very easily have resumed its illegal dumping of toxins the next day, requiring the plaintiffs to initiate the lawsuit all over again. By contrast, if a statute or regulation is challenged and a government entity goes through the effort to repeal that challenged regulation, it is far less likely that the governmental entity is doing it merely to avoid litigation and with the intent to reinstate the problematic regulation upon the case's dismissal.

Of course, the Town must still show that the challenged conduct cannot be expected to start up again. See City of Mesquite, 455 U.S. at 289 (finding that a challenge to a city statute was not moot even after the city repealed the statute, in large part because the city had indicated its intention to reenact the challenged statute if the case was dismissed); Rosebrock, 745 F.3d at 73 ("[B]ut when the Government asserts mootness based on such a change it still must bear the heavy burden of showing that the challenged conduct cannot reasonably be expected to start up again."); Doe, 122 F. at 3 ("The Supreme Court has held such statutory challenges not moot only where it appeared likely that the legislature would enact a similar policy if the lawsuit were dismissed."). Redeemer Fellowship argues that the Resolution "casts doubt on its permanence" because the Town has not recognized its wrongdoing and has not offered

any justification for "suddenly repealing the ban." ECF No. 29 at 4. The Town, by contrast, argues that the language in its Resolution demonstrates that there is no "practical likelihood of reenactment" because its actions were not motivated by religious prejudice in the first place, but rather by a desire to avoid liability for endorsing a particular religion in violation of the Establishment Clause. ECF No. 28 at 4. Moreover, the Town has stated that it "does not intend to reenact the prohibition of 'religious worship services' at the [Civic] Center." ECF No. 28 at 5. As such, the court finds that "there is no reasonable expectation" that the Town will reinstate the ban on religious worship services at the Civic Center now that the requests for injunctive relief are dismissed as moot. Reyes v. City of Lynchburg, 300 F.3d 449, 453 (4th Cir. 2002).

Like the court in Beta Upsilon, where the fraternity argued that the University "amended the Policy was a ploy to avoid an adverse ruling" and might reinstate its former policy if the court were to dismiss the appeal, this court echoes the Eleventh Circuit's finding that the plaintiff has "failed to present any affirmative evidence to support this position, and [the court is] not persuaded by such speculation." 586 F.3d at 917. Just as in that case, this court finds that Redeemer Fellowship "cannot overcome the presumption that the objectionable behavior will not recur." Id. Thus, in the same way that the courts in Beta Upsilon, Rosebrock, and Youngstown found that the government's enactment of a new policy addressing the challenged behavior mooted those cases, this court finds that the Town's Resolution and new Guidelines moot Redeemer Fellowship's request for preliminary[1] and permanent injunctive relief.

---

[1] Furthermore, the court finds that the motion for preliminary injunction in particular is mooted by the Resolution because it is impossible for Redeemer Fellowship to show

Although the resolution moots Redeemer Fellowship's request for injunctive relief, it does not moot the church's request for damages or for declaratory relief.[2] Redeemer Fellowship's prayer for relief asks that the court declare that the Town engaged in content-based discrimination and violated the church's rights under the First and Fourteenth Amendments.  The complaint also claims that "the Town's unequal treatment and discrimination against Redeemer Fellowship through its Amended Guidelines and determinations of its officers, agents, servants, employees, or persons acting at their behest or direction, has caused Redeemer Fellowship to suffer damages." Comp. ¶ 70.  Count 5 of the complaint also alleges that "[a]s a direct and proximate result of the Town's continuing violations of the Church's rights, the Church has in the past and will continue to suffer in the future direct and consequential damages, including but not limited to, the loss of the ability to exercise its constitutional rights."  Id. ¶ 122. Redeemer Fellowship's damages claim—the success of which depends on the court declaring that its constitutional rights were violated by the Town's ban on religious worship services—survives this order.  The court leaves it to the parties to determine whether or not Redeemer Fellowship did in fact suffer any damages by the Town's prohibition of the church's use of the Civic Center for their worship services from May 2018, when the church's application for use of the Center was denied, until December 2018, when the Town rescinded the ban.

---

that it is likely to suffer irreparable harm in the absence of preliminary relief, considering that the prohibition of religious worship services that created the alleged harm no longer exists.

[2] Naturally, given that any prospective injunctive relief has been mooted by the Resolution, the court's declaration would be limited to declaring whether the challenged Guidelines violated the Constitution during the time that they were in effect.

## IV.  CONCLUSION

For the reasons set forth above, the court **DENIES** as **MOOT** the motion for a preliminary injunction and finds **MOOT** Redeemer Fellowship's request for permanent injunctive relief.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**March 18, 2019
Charleston, South Carolina**